Stephanie Diane NEELY *v.* STATE of Arkansas

CR 94-64                                                        877 S.W.2d 589

Supreme Court of Arkansas
Opinion delivered June 13, 1994

*William R. Simpson, Jr*, Public Defender, by: *Llewellyn J. Marczuk*, Deputy Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Senior Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. Stephanie Diane Neely was convicted of aggravated robbery, theft of property, and kidnapping. She contends the Trial Court erred by allowing the State to amend its information at the close of her trial, finding sufficient evidence to convict her of kidnapping, and failing to consider the minimum sentences provided in Ark. Code Ann. § 5-4-501, as amended by Act 550 of 1993, for habitual offenders. Our holding is that Ms. Neely was not prejudiced by the amendment of the information. We hold the evidence of kidnapping was sufficient, and as the crime was committed before Act 550 became effective, Ms. Neely was properly sentenced pursuant to the law in effect when the crime was committed. The convictions are affirmed.

There was evidence from which the jury could have concluded that on January 12, 1993, Ms. Neely and an accomplice entered Sally's Beauty Supply in North Little Rock as the store was closing. The pair approached the cash register and pointed a gun at the two employees in the store. They demanded the money in the cash register and questioned the employees about the store safe. The employees were then ordered into a back room and bound with duct tape.

One of the employees, Gabrielle Lassiter, was bound to a chair, while the other employee, Ramona Tucker, was placed on the floor, bound about her arms and torso. The employees were

told not to attempt to seek help for at least ten minutes after Ms. Neely and her accomplice had fled.

Ms. Neely was arrested and tried for one count each of aggravated robbery, theft of property, and kidnapping. The kidnapping count listed both Ms. Tucker and Ms. Lassiter as victims. At the close of the trial, the State was allowed to amend its information to delete the name of Ramona Tucker as a victim from the kidnapping count.

The jury convicted Ms. Neely of all charges and sentenced her, as an habitual offender, to fifty years for the charge of aggravated robbery, thirty years for theft of property, and forty years for kidnapping. The Trial Court ordered the kidnapping sentence to run consecutively with the theft of property and robbery sentences.

### 1. Amended information

Amendment of an indictment, or by implication an information, may be made with leave of court unless the amendment changes the nature of the crime charged or the degree of the crime charged. Ark. Code Ann. § 16-85-407 (1987). That holds true even after the jury has been sworn unless the amendment creates an unfair surprise. *See Baumgarner* v. *State*, 316 Ark. 373, 872 S.W.2d 380 (1994).

Ms. Neely contends the amendment altered the degree of the charge against her. While Ark. Code Ann. § 5-11-102(b) (Repl. 1993) defines kidnapping as a Class Y felony, it also provides that if a defendant proves by a preponderance of the evidence that she released her victim alive and in a safe place prior to trial it is a Class B felony which carries a lesser sentence. Ms. Neely contends that had the jury considered her kidnapping charge with respect to both victims it would have been more inclined to find that they had been released.

The evidence was that, after the robbery, Ms. Tucker was able to get to her feet and go to the front of the store where she met her fiance who arrived to pick her up. Although the jury might possibly have thought Ms. Tucker not to have been sufficiently restrained to be the victim of kidnapping, or possibly that she was "released" when the culprits left the store, that specu-

lation does not affect the evidence that Ms. Lassiter remained bound to a chair, clearly "unreleased." The conviction was for one count of kidnapping. We will not reverse a conviction in the absence of a showing of prejudice, *Holloway* v. *State*, 312 Ark. 306, 849 S.W.2d 473 (1993), and we find none here.

## 2. *Evidence of kidnapping*

Ms. Neely next argues there was insufficient evidence to convict her of kidnapping. Arkansas Code Ann. § 5-11-102 defines kidnapping as follows:

(a) A person commits the offense of kidnapping if, without consent, he restrains another person so as to interfere substantially with his liberty with the purpose of:

\* \* \*

(3) facilitating the commission of any felony or flight thereafter, . . . .

\* \* \*

This case is very similar to *Frensley* v. *State*, 291 Ark. 268, 724 S.W.2d 165 (1987). Frensley was convicted of aggravated robbery and kidnapping which occurred at a restaurant. Frensley entered the restaurant, pointed a revolver at employees, and used duct tape to bind their hands behind them as they were forced to lie on the floor. We stated that when the restraint of a victim exceeds that which necessarily accompanies the crime of aggravated robbery, the defendant is subject to prosecution for kidnapping.

■ Given the evidence now before us, we find it sufficient to support the charge that Ms. Lassiter was kidnapped when she was forced to the rear of the store and bound to a chair. The evidence was somewhat stronger than that we considered in the *Frensley* case.

## 3. *The sentence*

Ms. Neely had been convicted of four prior felonies. She contends the Trial Court erred by sentencing her in accordance with § 5-4-501 as it appeared prior to its amendment by Act 550 of 1993. She claims she was entitled to the benefit of Act 550

which lowered the minimum sentences for habitual offenders. Act 550 came into effect after the crime was committed but before Ms. Neely was sentenced. It states:

> Arkansas Code Annotated 5-4-501 is amended *efective [sic] July 1, 1993*, to read as follows:
>
> 5-4-501. Habitual offenders — Sentencing for felony.
>
> (a) . . . .
>
> (b) A defendant who is convicted of a felony committed after June 30, 1983, and who has previously been convicted of four (4) or more felonies or who has been found guilty of four or more felonies, may be sentenced to an extended term of imprisonment as follows:
>
> * * *

In *State* v. *Murphy*, 315 Ark. 68, 864 S.W.2d 842 (1993), we stated the general rule that sentencing "shall not be other than in accordance with the statute in effect at the time of the commission of the crime. . . . We have also held that, in the absence of a provision stating that an act will apply retroactively, the act will apply prospectively only." The issue is whether the language of that Act indicates intent on the part of the General Assembly that it be applied retroactively.

Section 7 of the Act states it is applicable to all felonies committed "after June 30, 1983," yet the introductory sentence of section 7 states it is to be effective July 1, 1993.

The remainder of Act 550 creates Arkansas's new sentencing guidelines and the Arkansas Sentencing Commission, effective January 1, 1994. After the introductory sentence of section 7 containing the July 1, 1993, date it then recites the former § 5-4-501, unedited except for the reduction of the minimum sentence in the guidelines for sentencing an habitual offender.

The former § 5-4-501, as copied in section 7, provided it was applicable to a "felony committed after June 30, 1983." The origin of this date is Act 409 of 1983, which established the previous sentencing ranges for habitual offenders. Act 409 contained an emergency clause which made it effective July 1, 1983.

We can find nothing in Act 550 suggesting a reason the General Assembly stated section 7 would be effective July 1, 1993, and apply to any act committed after June 30, 1983. It is apparent that section 7 was intended to become effective July 1, 1993, and apply to acts committed after *June 30, 1993*, just as Act 409 was intended to become effective July 1, 1983.

■ We are very hesitant to interpret a legislative act in a manner contrary to its express language; however, we must do so when it is clear that a drafting error or omission circumvents legislative intent. In *Johnson* v. *United States Gypsum Co.*, 217 Ark. 264, 229 S.W.2d 671 (1950), we quoted *State ex rel Atty. Gen.* v. *Chicago Mill & Lbr. Co.*, 184 Ark. 1011, 45 S.W.2d 26 (1931), and held "When a word in a statute is omitted or misused it is the duty of the courts to disregard the error if the context plainly indicates the legislative intent." *See also Dollar* v. *State*, 287 Ark. 61, 697 S.W.2d 868 (1985); *Murphy* v. *Cook*, 202 Ark. 1069, 155 S.W.2d 330 (1941).

■ The intent of the General Assembly was to apply section 7 of Act 550 to crimes committed by habitual offenders after June 30, 1993, thus coinciding with its effective date of July 1, 1993. To hold otherwise would risk disproportionate sentences being imposed on habitual offenders who committed crimes between 1983 and 1993, yet were sentenced pursuant to different versions of § 5-4-501 dependent upon the date of trial. Clearly such a result was not intended. The Trial Court was correct in refusing to apply Act 550.

Affirmed.